# United States District Court

### SOUTHERN DISTRICT OF CALIFORNIA        2008 JAN 15  PM 3: 49

In the Matter of the Search of

**The Residence Located At**
4926 Auburn Dr.
San Diego, California

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

BY _____ DEPUTY

CASE NUMBER:

**'08 MJ 01 14**

I, Jose Gonzalez, being duly sworn depose and say:

I am a Special Agent of the Immigration and Customs Enforcement and have reason to believe that ☐ on the person of or ☒ on the premises known as

**4926 Auburn Dr., San Diego, California (more fully described in Attachment A)**

in the Southern District of California there is now concealed a certain person or property, namely

**the items specified in Attachment B**

which are evidence of a crime; contraband, fruits of a crime, and other items illegally possessed; and property designed or intended for use or which was used in committing a crime against the United States, concerning a violation of:

**Title 8 United States Code, Sections 1324 (alien smuggling).**

The facts to support a finding of probable cause are as follows:

**Attached Affidavit – continued on the attached sheet and made a part thereof**

I specifically request that the judge review this warrant for vagueness and over-breadth.

Signature of Affiant

Special Agent Jose Gonzalez
Immigration Customs Enforcement

Sworn to before me, and subscribed in my presence

At San Diego, California on _1-15-08_  3:20pm (Date/Time)

The Honorable Nita L. Stormes
United States Magistrate Judge

AO 109 (2/90) Seizure Warrant

1          **A F F I D A V I T**

2    I, Jose Gonzalez, being duly sworn, declare and state:

3                          **INTRODUCTION**

4          1.      I am a Special Agent with the United States Immigration and Customs Enforcement (ICE)

5    and have served in that capacity since December 2006 .  Prior to that I served as an Immigration

6    Inspector for Customs and Border Protection (legacy United States Immigration and Naturalization

7    Service) from September 2002 to December 2006.  I am currently assigned to a Human Trafficking unit

8    for the Resident Agent in Charge at San Ysidro, California.  In the course of my duties, I investigate,

9    apprehend and prepare cases for prosecution against persons involved in the bringing in of

10   undocumented aliens into the U.S., the transportation and harboring of undocumented aliens within the

11   U.S., and the utilization of illegally obtained, counterfeit, altered or genuine immigration documents by

12   undocumented aliens.   Additionally, I have received on-the-job experience and training relative to

13   detecting evidence of illegal smuggling of persons (and narcotics) into the U.S., the transportation of

14   illegal aliens within the U.S., and related criminal offenses.  This training included working and

15   consulting with senior agents from both ICE and other federal law enforcement agencies, interviewing

16   suspected and convicted alien smugglers, and conducting surveillance of activities related to alien

17   smuggling.  I have used this training in the performance of my duties as a criminal investigator.  I have

18   investigated multiple alien smuggling organizations during the course of my employment with ICE and,

19   to some extent, with CBP.  I have been involved in investigations that have resulted in several alien

20   smuggling arrests, many of which also led to seizures of vehicles and currency.  I have also participated

21   in the execution of several federal search warrants and federal arrest warrants.

22         2.      This affidavit supports an applications for a warrants to search and seize evidence from

23   the premises commonly known as 4926 Auburn Dr., San Diego, California (herein referred to as

24   "**TARGET RESIDENCE.**")  The **TARGET RESIDENCE** is described in more detail in Attachment

25   A-1 and pictured in Attachment A-2 attached hereto and incorporated herein by reference.

26         3.      Based on information below, I have probable cause to believe that the property described

27   in Paragraph 2 contain evidence of a crime; contraband, fruits of a crime, and other items illegally

28   possessed; and property designed or intended for use or which was used in committing a crime.

1   Specifically, I have probable cause to believe that within the above properties is evidence of alien

2   smuggling in violation of Title 8, United States Code Section 1324, and conspiracy to do same.

3       4.      The evidence to be searched for and seized is listed in Attachment B to the search warrant

4   application, incorporated herein.  Based on my training and experience, as detailed above, and on

5   information obtained in the course of this investigation, as detailed below, I believe there is probable

6   cause to believe that the items listed in Attachment B will be found at the **TARGET RESIDENCE**

7   described in Attachment A-1 and pictured in Attachment A-2.

8       5.      The following is based on my own investigation, oral and written reports by other law

9   enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records,

10  database checks, searches, phone analysis, and other investigation.  Since this affidavit is for a limited

11  purpose, I have not included every fact I know about this investigation.  I set forth only facts necessary

12  to establish foundation for the complaint and requested search and seizure warrants.  Conversations

13  below are set forth in substance unless noted, and most call descriptions are based on summaries

14  prepared by monitors, not final transcripts.  Dates and times are approximate.

**PROBABLE CAUSE**

16  A.    **OVERVIEW**

17      6.      The investigation involves a joint effort by ICE and the U.S. Border Patrol into an alien

18  smuggling organization (ASO) operating in and throughout San Diego County and Mexico.  This

19  organization utilizes the California ports of entry and other areas unmanned by designated officers.

20  Beginning in approximately January, 2006, U.S. Border Patrol Agents working in the San Diego Sector

21  became aware of an ASO headed by Jose Luis NARANJO-Ramirez (a.k.a. "El Sorga").  NARANJO

22  smuggles aliens through unmanned areas along the southwest border.  Once in the United States the

23  illegal aliens are temporarily housed at "drop houses."  One of the "drop houses" utilized by NARANJO

24  is run by Luis Manuel BECERRA-Martinez (a.k.a. "La Condesa.")  BECERRA is known to house illegal

25  aliens for several ASOs, one of which is NARANJO's.

26  B.    **SIGNIFICANT EVENTS**

27      7.      On April 6, 2006, Agents conducted a consensual search of 5540 Olvera Ave., San Diego,

28  California and discovered eight undocumented aliens.  BECERRA, the tenant and caretaker of the

1    residence, admitted to being engaged in harboring aliens for $30.00 per alien.

2        8.      On July 26, 2006, Agents again approached the residence located at 5540 Olvera Ave.,

3    San Diego, California. BECERRA answered the door. When agents asked if they could come inside,

4    BECERRA replied "sure, no problem." BECERRA gave consent for agents to search the premises.

5    Four illegal aliens were discovered. In addition, agents found several items suspected to be related to

6    alien smuggling, including smuggling ledgers listing numerous alien smuggling organizations, including

7    the "Sorga" organization, pay/owe sheets, fraudulent permanent resident cards, fraudulent social security

8    cards, and a DayPlanner organizer with numerous names, phone numbers and addresses.

9        9.      On June 19, 2007, a confidential source, hereinafter referred to as CS-1[1], provided

10   information to Agents. CS-1 stated that he knows "La Condesa" because "La Condesa" lives in the

11   apartment unit directly above CS-1's uncle. CS-1 stated that on June 17, 2007, he was contacted by "La

12   Condesa" to pick up aliens near the Border Field State Park. "La Condesa" instructed CS-1 to bring the

13   aliens to "La Condesa's" house at 4926 Auburn Dr., San Diego, California. CS-1 accompanied agents

14   to "La Condesa's" residence and showed agents the **Target Residence**. CS-1 stated that the load

15   vehicles used to transport the illegal aliens to and from **Target Residence** park on the driveway rather

16   than utilize the dirt road located behind the residence. CS-1 also identified two vehicles owned and/or

17   driven by "La Condesa" that were parked at the residence – a burgundy 1994 Ford Explorer (5WUL058)

18   and a red 1998 Ford Mustang convertible (3WWF610).

19       10.     On June 23, 2007, U.S. Border Patrol Agents apprehended BECERRA at the Border Field

20   State Park. BECERRA was the driver of a Red Ford Explorer bearing California license 5WUL058.

21   Agents observed individuals running away from said vehicle as he approached. The passenger of the

22   vehicle admitted that she and BECERRA were at the park to pick up illegal aliens. Records checks

23   revealed that the Explorer was registered to Luis BECERRA, 4926 Auburn Drive, San Diego, CA,

24   although the vehicle has a Release of Liability to Martin Gonzalez, Tijuana, Mexico with a receipt date

25   _____

26   [1]    CS-1 is an unpaid source who provided information after being apprehended on June 19, 2007, as a driver of a vehicle found to contain four illegal aliens. CS-1 agreed to cooperate with agents.

27   CS-1 has an immigration history which includes several prior removals from the United States. Information provided by CS-1 is consistent with and has been corroborated by other sources and additional investigation. As far as agents are aware, CS-1 has never knowingly provided false

28   information to law enforcement while cooperating with agents. At this time, CS-1 is considered reliable.

3

1  of July 31, 2007, and a transfer date of June 12, 2007.

2       11.    On September 6, 2007, a second confidential source, hereinafter referred to as CS-2,[2/] was

3  interviewed by agents. CS-2 agreed to cooperate with agents and provided information of an alien load

4  house in San Diego operated by an individual known as "La Condesa." CS-2 stated that he has met "La

5  Condesa" a few times and identified Luis Manuel BECERRA-Martinez as "La Condesa."

6       12.    On September 10, 2007, a third confidential source, hereinafter referred to as CS-3,[3/] was

7  apprehended by agents. CS-3 stated that he has been driving load vehicles for an alien smuggling

8  organization for about three months. CS-3 agreed to take agents to the residence that he believed to be

9  the residence of the smuggler. CS-3 first described a location that matched the description of 4926

10 Auburn Dr. and then led agents to the **Target Residence**, which matched the description he had

11 previously given.

12      13.    On October 10, 2007, agents observed a red Ford Mustang bearing California License
                         at the TARGET Residence 9·9·

13 3WWF610 parked on the driveway. Records checks revealed that this vehicle is registered to Luis M.

14 BECERRA at 4926 Auburn Dr., San Diego, California.

15      14.    On January 15, 2008, I observed BECERRA at the Target Residence. Other agents saw

16 BECERRA exit the **TARGET RESIDENCE** to check the mail. Agents arrested BECERRA pursuant

17 to an arrest warrant based on a previously filed indictment in case number 07cr3442-JAH. I observed

18 one individual jump from the balcony at the back of the Target Residence. The individual began to flee

19 from the **TARGET RESIDENCE** and was apprehended by agents from Immigration and Customs

20 Enforcement and Border Patrol. Based on the facts set forth in the preceding paragraphs, agents believed

21

22      [2/]    CS-2 is an unpaid source who provided information after being apprehended on
   September 6, 2007, guiding six illegal aliens into the United States. CS-2 agreed to cooperate with
23 agents. Information provided by CS-2 is consistent with and has been corroborated by other sources or
   additional investigation. As far as agents are aware, CS-2 has never knowingly provided false
24 information to law enforcement while cooperating with agents. At this time, CS-2 is considered reliable.

25
      [3/]    CS-3 is an unpaid source who provided information after being apprehended on
26 September 10, 2007, while he was waiting to pick-up and transport a group of 10 illegal aliens into the
   United States. CS-3 agreed to cooperate with agents. CS-3 has a criminal history which includes arrests
27 for the possession of a controlled substance and misdemeanor convictions for burglary. Information
   provided by CS-3 is consistent with and has been corroborated by other sources or additional
28 investigation. As far as agents are aware, CS-3 has never knowingly provided false information to law
   enforcement while cooperating with agents. At this time, CS-3 is considered reliable.

the individual was illegally in the United States. Therefore, a field interview was conducted of the individual, who identified himself as Abraham Miranda MARTINEZ (DOB: 10-9-83). MARTINEZ stated that he ran from the agents because he was a citizen of Mexico of no documents to be in the United States legally.

15.     From my training and experience, I know persons engaged in alien smuggling sometimes keep at their residence the items in Attachment B. In particular, I am aware that persons who illegally transport and harbor aliens sometimes keep at their residence or other locations where they commonly engage in alien smuggling activity, records relating to their criminal activity, including, but not limited to, names of participants of alien smuggling; lists containing names of smuggled aliens along with their destination and fees paid or fees to be paid; registrations, title records and rental contracts of vehicles used in the smuggling and transporting of undocumented aliens; financial and banking records recording the receipt of money from smuggling and the transfer and concealment of said money; telephone tolls and communication equipment used to make calls relating to alien smuggling arrangements; and documents and receipts evidencing temporary lodging of undocumented aliens. It is also my experience, and the experience of law enforcement officers with whom I have worked, that undocumented aliens' passports, identity documents, and other property belonging to aliens are often left behind at locations where they have been transported or harbored. Such documents and property are left behind because the aliens are often moved from one location to the other with little advance notice. In most cases, smugglers collect such documents and property from the aliens to conceal their citizenship and identity if apprehended and/or questioned by law enforcement personnel.

16.     The investigation into the criminal activities of the above individuals reveals that their alien smuggling activities are ongoing. Due to the frequency and volume of aliens being smuggled, the number of organizations BECERRA is working for, and the relatively sophisticated manner in which the above individuals conduct their illegal activities, I believe they have been engaged in the illegal smuggling and harboring of aliens for a long period of time. Based on my training and experience, I believe that the criminal activity described above is, by nature, self-perpetuating.

17.     Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit,

5

1  I believe that the items set forth in Attachment B, which evidence violations of the Title 8, United States

2  Code, Sections 1324, as set forth above, will be found at the above-noted locations. Based on the

3  aforementioned information and investigation, I believe that the described property in Attachment B will

4  be recovered when this warrant is served, thus I believe that the grounds for the issuance of a search

5  warrant exists for the **TARGET RESIDENCE**, which is more fully described in Attachment A-1 and

6  pictured in Attachment A-2.

7        18.    SEALING REQUEST: Because this is an ongoing investigation and premature disclosure

8  of the investigation and this affidavit could endanger agents and officers, cause suspects to flee, and

9  cause the destruction of evidence, I request that this affidavit, the search warrants, the application for

10  the search warrant, the attachments and all other associated court records be sealed until further court

11  order.

12        19.    WHEREFORE, I request that the court issue a search warrant for the location in paragraph

13  2 to seize the items in Attachment B.

14

15

16                                                                        JOSE GONZALEZ
                                                                           Special Agent
17                                                                         Immigration and Customs Enforcement

18

    SUBSCRIBED and SWORN to before me
19

20
    this ___15___ day of January, 2008.
21

22

23

24

25

26

    United States Magistrate Court Judge
27  Southern District of California

28

                                        6

## ATTACHMENT A-1

### Description of the Property and Premises to be Searched

### 4926 Auburn Drive, San Diego, California

The premises located at 4926 Auburn Drive, San Diego, California, including the residence, all rooms, attics, storage areas, safes, briefcases, containers, trash areas, trash containers, surrounding grounds, vehicles associated with this address and outer buildings of any kind located thereon.  The residence is described as follows:

The residence is on the second floor of a two-story house that is divided into four units.  The exterior of the structure is grey-colored stucco with white trim and a grey-colored shingled roof.  The residence is located on the east side of the street, facing west. The residence is clearly marked in black numbering on the left side of the front door. A primary access to the residence is a staircase leads up to the residence and accesses only that unit.

As well as all vehicles located within the property boundaries, and parked on the street that have been determined to be associated to the residence.

## ATTACHMENT A-2





**ATTACHMENT A-2**

## ATTACHMENT B

### Description of Items to Be Seized

### 4926 Auburn Drive, San Diego, California

1. Documents relating to or memorializing the harboring, transportation, coordination and smuggling of illegal aliens, including but not limited to lists, pay-owe sheets, records of alien smuggling, log books, ledgers, storage records, and papers and documents containing lists of names and/or numbers of individuals involved in the coordination, transportation and smuggling of illegal aliens;

2. Documents and articles of personal property relating to the existence of a conspiracy to smuggle illegal aliens into the United States and distribute them throughout the United States, including computers and computer equipment, computer software, personal telephone/address books, including electronic organizers, Rolodexes, telephone answering pads, telephone bills, and photographs;

3. Documents and articles of personal property relating to the obtaining, secreting, transfer, expenditure and/or concealment of money and assets derived from or to be used in the coordination, transportation and smuggling of illegal aliens, including books, receipts, records, bank statements, business records, money drafts, money order and cashier's check receipts, safes and records of safety deposit boxes and storage lockers;

4. Financial proceeds and articles of personal property relating to the coordination, transporting and smuggling of illegal aliens, including U.S. currency, negotiable instruments and financial instruments including stocks and bonds, and deeds to rental property;

5. Items commonly used to facilitate the smuggling or harboring of aliens such as communications equipment (cell phones, PDAs, etc.), firearms, ammunition and other weapons;

6. Communications equipment such as pagers, cell telephones, digital telephones, and two-way radios and counter surveillance equipment used to detect police activities and surveillance, including radio scanners, and wire transmitter detectors;

7. Photographs of individuals coordinating, transporting, or smuggling illegal aliens;

8. Documents and articles of personal property relating to the identity of persons occupying, possessing, residing in, owning, frequenting or controlling the premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or paging devices, telephone answering pads, storage records, vehicle and/or vessels records, canceled mail envelopes, correspondence, financial documents such as tax returns, bank records, safety deposit box records, travel documents, personal identification documents, and documents relating to obtaining false identification, including birth

certificates, drivers license, immigration cards and other forms of identification in which the same person would use other names and identities other than his or her own;

9. Incoming telephone calls while at, or away for cellular telephones, from the premises for execution and service of this search warrant, including answering, listening to, recording, monitoring and conversing with callers who appear to be calling in regard to alien smuggling business on the telephone or answering machine or device, and to return all calls left on any answering machine or device, or telephone beeper or pager located within the premises to be searched, without revealing the agent or officer's identity.